FRANCIS G. WILKINS *et al.*, plaintiffs in error, *vs.* HENRY L. BENNING *et al.*, defendants in error.

1. The ordinary has no authority to purchase land for the benefit of the county, sold for non-payment of the state and county taxes.
2. Where an ordinary purchases for the county, land sold for the non-payment of the state and county taxes, at a sum far below its actual value, pays for it out of the county funds, holds it until reimbursed the sum thus paid out, and then conveys it to the county treasurer for an amount far less than its value, who purchases with a knowledge of all of the facts aforesaid, equity will decree a conveyance of said property to purchasers at a sale thereof, under an execution against the former owner, based on a judgment obtained subsequent to the aforesaid tax sale.
3. The ordinary has no authority to pay the city taxes, on property purchased as aforesaid, out of the county funds.

County matters. Ordinary. Taxes. Equity. Judgment. Before Judge JAMES JOHNSON. Muscogee Superior Court. May Term, 1873.

For the facts of this case, see the decision.

PEABODY & BRANNON, for plaintiffs in error.

HENRY L. BENNING, for defendants.

WARNER, Chief Justice.

This was a bill filed by the complainants against the defendant to compel him, for the causes alleged therein, to execute a deed of conveyance to them for city lot number one hundred and ninety-six, in the city of Columbus, and deliver possession thereof, and for such other relief as might seem equitable and just. On the trial of the case, the defendant demurred to the complainants' bill, which was overruled by the court. The case was then tried, and the jury, under the charge of the court, found a verdict in favor of the complainants. The case comes before us on the exceptions made in the record to the charge of the court to the jury, and refusing to charge as requested, and in overruling the demurrer to complainants' bill.

The facts of the case, as disclosed by the evidence in the record, are substantially as follows : On the 7th day of September, 1869, the city lot was sold by the sheriff of Muscogee county, by virtue of a *fieri facias* issued by the tax collector of said county against James F. Winter, for his state and county tax, amounting to the sum of $127 50, and was purchased by Duer, the ordinary of said county, for the sum of $143 00, the sheriff making him a deed to the lot as ordinary. The purchase money was paid by Duer, ordinary, out of the county funds by allowing the sheriff a credit in his settlement with the county for taxes collected under tax sales. The written agreement, signed by Duer and Benning, shows that Duer, as ordinary, purchased the lot for the county to secure the payment of the tax due by Winter, and that he held the title to the lot, as ordinary, for that purpose, and his books show that he opened an account with Winter and the county of Muscogee, and charged Winter $149 55, the amount of the tax *fi. fa.* and costs of advertising, etc., and credited

him with $500 00, for rent received, but does not state that this amount was received for the rent of lot one hundred and ninety-six; but the evidence in the record is, that the rent of the lot was worth $300 00 per annum. Duer, as ordinary, charges Winter, in his account, with the city taxes, which he alleges he paid for him to ·the city, and thereby seeks to reduce the amount of rent received by him for the lot which he held for the county as ordinary. An execution in favor of Brockett and others against Winter, issued on a judgment obtained in June, 1870, was levied on lot one hundred and ninety-six, as the property of Winter, 4th of March, 1871, and sold by the sheriff in May, 1871, and purchased by the complainants for the sum of $1,400 00, the sheriff making to them a deed to the lot. On the 21st of December, 1871, Duer, as ordinary of Muscogee county, conveyed, by deed, to Wilkins all the right, title, interest, claim or demand which he, as ordinary aforesaid, had in and to lot one hundred and ninety-six, without warranty, for the consideration of $350 00. Wilkins was the county treasurer, and had notice of all the material facts before recited when he purchased the lot, which the evidence shows was worth $3,000 00, and the annual rent thereof, $300 00. Duer, the ordinary, had possession and control of the lot, under his pretended purchase, for two years and three months before he sold it to. Wilkins. There was no error in overruling the demurrer to the complainants' bill.

This case presents the extraordinary spectacle, at least in the courts of this state, of two public officers combining together to appropriate to their own use a valuable city lot worth $3,000 00, under *color* of legal authority to do so. The theory of the defendant's case, as presented by the argument, is that Duer, as ordinary for the county, had the legal right to purchase the property at the sale, pay for it out of the county funds, and hold the property in trust for the county until the taxes due•should be paid, and that the· title to the lot being made to the ordinary, it vested in the county, and that Wilkins acquired a good title by his purchase of it from Duer, the ordinary of the county. The reply is that the

ordinary had no authority, under the law, to make the purchase of the lot for the benefit of the county, or to make sale of it as the property of the county in the manner as set forth in the record. Assuming, however, that the ordinary originally intended to act in good faith, and that he purchased the property in his official capacity to secure the payment of the taxes due to the county, and for the benefit of the county, though without any authority of law to do so, why did he, after holding the property long enough for the rents thereof to pay the amount of tax due the state and county, convey the title to the lot to Wilkins? There was certainly no good reason why he should have done so to protect the interest of the *county* in the lot. It is true he attempts to reduce the amount of rent received, by crediting himself, as ordinary, with the amount of city taxes paid by him out of the county funds, but he was not the officer for the city, he was an officer for the county, and as such officer had no authority to pay taxes due the city out of the county funds. The jury, however, have found by their verdict that he had received a sufficient amount from the rent of the property to pay the county and state taxes due thereon, and, in our judgment, the evidence in the record is sufficient to sustain their verdict as to that point in the case. The conveyance of the title to the lot by Duer, the ordinary, to Wilkins, the county treasurer, who had knowledge of the facts, was *merely colorable,* and too transparent to deceive anybody as to its real object and purpose. The whole transaction was without authority of law, and contrary to public policy, and cannot receive the sanction of this court. All public offices in this state are created for the benefit of the people thereof as an organized community and not for the benefit of any particular individual person or persons; and whenever a public officer, in the discharge of the duties imposed on him by law seeks, under *color of his office,* to make private gain for himself or family beyond his compensation as prescribed by law, he and all persons acting in complicity with him for that purpose, deserve and should receive

the stern condemnation, not only of the courts of the country but of all good men.

In view of the facts disclosed by the record, we find no material errors in the charge of the court to the jury, or in the refusal to charge as requested, and if there had been some technical errors in the charge, still the verdict is right, and we would not have disturbed it for that reason.

Let the judgment of the court below be affirmed.